You may be seated. Our third case today is Brooks v. I can't pronounce his last name without mispronouncing it, so I'll let someone help me. Kijakazi. Pardon? Kijakazi. Yes, Your Honor. Very good, but where is, we've got a lawyer on the TV here. Good to have you with us, sir. Thank you, Your Honor. Mr. Terrell. Yes, Your Honor, thank you. Yes, I'm sorry about that. I was looking over here at your desk and it's empty. And so we have you right here. It's good to have you with us. Go right ahead. Thank you, Your Honor. May it please the court, my name's David Schirmel and I represent the disability applicant here, Ms. Brooks. Ms. Brooks offers three really straightforward arguments which are fully grounded in either Supreme Court decisions, longstanding Fourth Circuit precedent, or SSA's own policies. By contrast, SSA seeks to create three novel, unprecedented exceptions to all of this well-settled law. And I want to actually mention something that happened in the argument immediately before this one. I believe it was Judge Hyten said to counsel that fact finders have to make findings, not, well, she could have found X. In other words, no post hoc rationalizations. That's exactly true here. There was evidence of record from a vocational expert which the ALJ ignored. What was that evidence? It deals with something called the composite jobs rule, which the Fourth Circuit has never mentioned, but it's not disputed between the parties. Very important piece of policy. And it holds that in a case like this one, where a composite job might be present and the ALJ can make an as-generally determination, that as-generally step for determination is barred as a matter of law. So if indeed, as the first VE said, this was a composite job, then the ALJ's decision is irretrievably flawed because that evidence was ignored. SSA admits that this evidence was ignored. The issue before this court is not whether a composite job was present or not. The issue is that the ALJ ignored evidence that it was. We cite a mountain of legal authority for the proposition that ALJs must acknowledge, discuss, and analyze evidence of record, which is relevant to outcome-dispositive issues. As of now, can I ask you, I'm just trying to conceptualize what the nature, I'm going to describe these as the first and the second hearing, just in the sense of, I understand everyone got together with the ALJ twice, and there were two occasions where the ALJ heard from people. I'm just going to call the first time they all got together the first hearing and the second time the second hearing. Your argument that the ALJ failed to discuss the contrary evidence, the expert who testified at hearing one did not testify at hearing two, correct? Correct. So, your argument is predicated on the notion that the second hearing was in some ways just a continuation of the first. Is that right? It seems like it has to be. You say, because in order for that first vocational expert's testimony to still be in the record, the second hearing has to, in some sense, be a continuation of the first hearing. Is that correct? No, Your Honor. I think that's reasonable to say, but the reason why we're saying this is because it is part of the record. You can look at the transcript of record. It's in the certification page. It's in the record, and I believe the pages are 67 through 105 of the record. It is in this record before this court. It was in the record before the will be considered at your hearing. That's not what they're saying now. No, sure, and that's a helpful clarification. So, I don't want us to get hung up on the word hearing. That doesn't really matter, but you think this is basically all one proceeding, right? Because each proceeding has its record, and your view, this whole thing is one proceeding. And in fairness, there's some language in the Appeals Council's remand order that makes it seem like this is a continuation of the previous proceeding, but that's your argument, right? Absolutely, and under agency policy, there is no question whatsoever this is a single claim. The district court talks about vacated judgments. That has nothing to do with disability law. There is a single application in 2015, and as we're going to talk about later, all factual and legal determinations have to be made de novo on remand. So, this is a single proceeding, and if you look at the hearing notices and Justice O'Connor's controlling concurrence in Sims, it says it really matters what you tell a claimant. How are you going to tell a claimant eight times that we're going to consider everything that's in the record and now say you didn't have to? And the thing I'm going to tell you, Your Honor, what's most disturbing to me as a former SSA attorney is I look this issue up. Five different circuit courts, SSA, argued the opposite of what they're arguing today. Eleven district courts over a period of decades, they argue it the opposite of what they're saying today. In other words, in those cases, they said the first V.E. can be looked at to deny benefits. Now they're saying first V.Es are inherently irrelevant. You can't have it both ways. So, overall, Your Honor, I think what I would say... Unfortunately, and I wish it didn't, but this is what, to me, creates an appointments clause problem that's maybe a different one that's discussed in the briefs. If we think this is all one proceeding and that this record is all one record, then this isn't a case where there was an improperly appointed ALJ whose decision was vacated and who then made another decision after being properly appointed. This is a single proceeding that started before an improperly appointed ALJ, who at some point during the course of that proceeding became properly appointed and was, by the time they rendered the final decision, properly appointed. But then it strikes me that SELA law suggests you have to remand that case back because this case, under your argument, I think, started out before an improperly appointed ALJ and that single proceeding was resolved by that same ALJ. Am I wrong about that? That's correct, Your Honor. And if you look at Lucia, it's page 2055 of the Supreme Court's decision. It talks about that there is a constitutional taint that goes forward in the proceeding that attaches to that unlawful judge. They are barred from that case from then on. SSA never talks about the constitutional taint. What happened at every part of this process that is in the record matters. If you like, Your Honor, I could get to the constitutional issue. I was going to talk about PRT next, but I'm happy to talk about the constitutional issue with you. No, that's fine. Those are the questions I just wanted to make sure I asked about that. What do you want us to do? Send it back or do over before another ALJ? Yeah, and just to be clear... Is that right? Yes, Your Honor. And it has to go to a new ALJ because ALJ Bright already heard this case twice. Under agency policy, she's barred from hearing it. He heard it twice, once when he hadn't been appointed properly and once after he was appointed properly. And you say that contravenes the Supreme Court authority. Correct. And what I'm saying is if you remand, it has to go to a new ALJ. I understand. And you say that the 9th Circuit handed you a nice case here a month ago that says what you say. Correct. Your Honor, our district judge here, who's a very able district judge, said it's distinguishable from the Supreme Court authority. Yeah, I'll get into the constitutional issue, Your Honor, and then I'll talk about the... Well, it seems to me that's the first thing you need to argue. We don't get to the merits. We wouldn't get to the merits until... We're going to send it back. Well, actually, due to the doctrine of constitutional avoidance, the court shouldn't reach the constitutional issue until it has to. But this court... We're going to face up to it. And I'm going to address it. At 1018 of probes, this court said the following, claimants for by failing to raise them during their administrative proceedings. That resolves this case. That is black letter law from this court, which we cite repeatedly in our opening brief, and SSA never mentions probes. In addition, the 9th Circuit, as Your Honor noted, ruled in direct conformity with what we argue here. And let's be clear what SSA is doing, because they're playing verbal gymnastics. They say it's not a forfeiture defense. If you're saying a claimant is not entitled to relief because they didn't argue it below, that's a forfeiture defense. So whether they go out of their way to say, oh, it's some other version in its incentives, they're arguing exactly what they argued unsuccessfully during the Lucia litigation, where I argued it against Mr. Salzman in several of those cases. The other aspect of what SSA says is that an ALJ need only be properly appointed by the time of the remand hearing. We know that is absolutely false based on Lucia, based on Carr, based on probes, and even based on SSA's own 19-1P. Every single remand in those cases were assigned to new ALJs. So there is a constitutional taint that attaches that SSA has not mentioned. It is indisputable that ALJ Bright heard this case during a time she had no lawful authority to do so. And I want to be clear about a point of agency policy, because this must have been written by DOJ. No disability attorney would argue this. This is basic agency policy. Under SSA's regulatory scheme, there are no merits-based remands and non-merits-based remands. That does not exist. Under SSA policy, all remands require de novo determination of every single factual and legal determination. It's said in the Palms, it's said in the HALECs twice, and it's said by the government in the Federal Register. This has been SSA's policy for many, many years. We made this exact point about the de novo nature of disability remands at 20 and 21 of our brief. SSA never mentioned it. In general, Glide & Company from the Supreme Court, FriTag as well, encourages courts to reach the merits of appointments clause challenges because they're so important in helping to SSA has engaged in quiet noncompliance with the Supreme Court's decision in Carr, and absent something being done about it, that's going to continue. With that said, Your Honors, I want to talk about the second issue, which I haven't had a chance to issue yet, address yet, and it's very important. An ALJ cannot omit from the residual functional capacity finding proven mental functional limitations without explanation. But if we rule in your favor on the constitutional question and remand it, we don't reach the merits now. Well, under the doctrine of constitutional avoidance, you should reach the substantive questions first. But if we, well, all right, you can argue the way you want to. Okay. I'm happy with any remand, just to be clear, Your Honor. But an ALJ cannot omit proven mental functional limitations. Either the ALJ has got to include those limitations in the RFC or explain why she didn't. The Tenth Circuit in Wells ruled in direct conformity with what we're arguing on this second issue. And the legal violation here is more egregious than Wells because in Wells, the ALJ at least explained why I found these mental limitations at steps two and three, but here's why I didn't include them in the RFC. Those explanations were deficient, so Wells remanded. In this case, there's no explanation at all. So it's an even more egregious violation than Wells. SSA does not dispute that Wells is good law, and SSA never issued an acquiescence ruling, so Wells is not inconsistent with agency policy. Every single piece of relevant law, Fourth Circuit case law, the regulations, the rulings, the POMs, and even the statute itself say that a claimant's impairments and limitations must be considered in combination. This is black letter law. SSA convinced the court below that because some of these limitations on the mental side stem from a non-severe impairment that they didn't exist. That is false. It is not only false because of the provisions I just cited, but also because mild and none are defined differently in the regulations at 12.00 F2. Even the ALJ herself at pages 18 and 19 differentiated between none on one side and mild on the other. Our position that any divergence between the RFC and the original findings at steps two and three, what are referred to as the PRT findings, that they must be explained that divergence is directly consistent with what this court previously held in Masseo. Now, Masseo involved moderate limitations, but the principle is the same. A mental RFC assessment used at step four, and I'm going to quote SSA policy 96-8p, requires a more detailed assessment by itemizing various functions contained in the broad PRT categories. We went from broad, you've got some mild mental functional limitations, to absolutely none. That's not more detailed. It's non-existent. Your honors, our position is very simple on all three issues. We are locked into bedrock black letter law to which they seek exceptions that should be firmly rejected because these exceptions have no basis in agency policy and are unprecedented. Remand should occur for a new hearing before a new ALJ. Thank you very much, sir. Thank you, your honor. Appreciate it. Let's see what the commissioner has to say. Mr. Salzman. Thank you, your honor. And may it please the court, Joshua Salzman on behalf of the commissioner. I'm here to address the appointments clause issue. My colleague, Mr. Hartley, will be providing argument on the other two issues in the case. And I want to begin by emphasizing that contrary to what Mr. Chermo will tell you, this case is very different from Bucci. And he's asking you to expand that decision in very significant ways. I think Judge Heitens actually pointed out exactly what the distinction is during a colloquy a few moments ago. In Bucci, the Supreme Court said at 2055, the source of the appointments clause violation is that ALJ Elliott, who was the SEC ALJ at issue in that case, heard and decided the case without a proper appointment. The Supreme Court was reviewing a decision reached by an administrative law judge who was never properly appointed. Everybody agrees that's not this case. Everybody agrees that in July of 2018, after the first hearing, but before the second hearing, ALJ Bright received a proper appointment. She then conducted a hearing and issued a decision at which time she was properly vested by the commissioner with all of the governmental authority needed to discharge that responsibility. So what Mr. Chermo is saying is that somehow her involvement at an earlier stage of the hearing necessarily, irretrievably corrupts her or taints her in a way that precludes her later involvement. Not corrupts her, but corrupts the proceeding that began when she hadn't been properly appointed. But there's nothing in Bucci that says, for example, imagine, forget one hearing, two hearings. Imagine that there's a single hearing. It begins. And on day one of the hearing, Ms. Brooks had said, Your Honor, I think you might not be properly appointed. And the ALJ says, you know what, that's right, notifies the commissioner. The commissioner says, of course, I want you to sit in this case and issues a decision, an appointment order. And then Ms. Bright, or ALJ Bright, I should say, continued to hear it. There's nothing in Bucci and nothing in this court's cases that I'm aware of that actually speaks to that situation. Now, I agree nothing speaks directly to that situation, but that's a helpful hypo because my reaction is, well, then we need to start completely over. I'll tell you why I think that's wrong, Your Honor. It's important to understand that the remedy Bucci imposed is a very drastic and unusual one. And the Supreme Court explained its decision to do it in footnote five of that decision, which I think bears very careful parsing. I think that's the one about Justice Breyer's view. That's correct, Your Honor. Which, of course, is not the ruling of the court. That's Justice Breyer's view. But in the text of it, they talk about the taint from the invalid part of the thing. That's the Supreme Court. Absolutely, Your Honor. I think the word taint can't be used out of context. What the Supreme Court said was- I'm not going to say that they used it out of context. I think the reason footnote five is so important, Your Honor- I'm talking about the text. I'm talking about the text of that page where the footnote call is, footnote call five. The three or four sentences immediately above that. That's the part that you've got to deal with. Absolutely, Your Honor. And there was no question that under Buccia, that if A.L.J. Bright had issued a final decision, and this court were reviewing a final decision issued by A.L.J. Bright before she had received an appointment, that constitutional taint would attach. That's exactly- If you look at that whole paragraph, we're on page 2055 of the decision here. The court begins by noting that A.L.J. Elliott heard and decided Buccia's case without the kind of appointment the clause requires. And it then says, as a result, there's this taint that precludes him from hearing the case on remand. And the court then goes on to explain why it's prescribing this unusual and intrusive remedy. And what does it say? The first thing it says, it acknowledges Justice Breyer's point that the structural purposes of the appointments clause actually don't require this remedy because the- You're into the footnote again. Back to the footnote. You're arguing Justice Breyer's position as opposed to the court's position. I disagree with that characterization, Your Honor. You can disagree with the characterization, but I'm just talking about, it looks to me like that's all in footnote five. And the text is what would be the governing part of what the Supreme Court said or the majority said. No, the footnote- Okay, hold on. All right. It keeps saying Justice Breyer, Justice Breyer. And I respect Justice Breyer to no end, but- That footnote isn't Justice Breyer. The part that's written above there, that's Justice Kagan, right? That is footnote five. Footnote five. It is hers, but she's characterizing Justice Breyer and distinguishing it. No, she's expounding, she is further expounding on the rationale for the prescription of an unusual remedy. And she's doing it in response to a criticism from Justice Breyer. Right. That is her explanation on behalf of the entire, writing a majority on behalf of the Supreme Court and is as much binding as anything in the text. So as you say, she gives two reasons. One is you need to give people an incentive. And the other reason she gives is because people who make decisions sometimes have a hard time reconsidering the decision they've already made. So let's think about those here. So when the Appeals Council sent this case back for further consideration, could the claimant have sought judicial review at that point? I think not, probably. I think not. Okay. So this is her first chance to raise this issue before this court, because she didn't have a previous chance to raise this issue before this court. And then second, so what happened is there was hearing one, the ALJ denied benefits. It was sent back to the ALJ, who denied benefits again. That's true too, right? On different grounds. But yes, there was a denial the second time. But the first decision was vacated. The ALJ conducted a new hearing, wrote an entire new opinion, and had been told by the Appeals Council that she had gotten it wrong in part the first time. So this isn't a situation where, as in footnote five, the ALJ would have no reason to think. No, I agree it's not the exact same situation. But in terms of the incentives, I'd also emphasize that here, there's not the same reason to incentivize claimants to raise these objections, because here the agency unilaterally fixed the problem in July of 2018 before the second hearing. With due respect, I guess my view is the moment this case was screwed up is when the to a different ALJ, which seems like it would have fixed this problem. Sure, that certainly would have avoided this. But the question is, does the Constitution compel that? And LUCEA is an unusual remedy. It's tied to a particular rationale. Those rationales simply do not apply here. And I ask you a factual question. In the wake of LUCEA, did the Appeals Council just sui sponte, vacate a bunch of improper decisions and send them back? My understanding is, and this is reflected in that SSR 19-1P that Mr. Chermol referred to, what the agency policy was not to send every merits-based remand back to a new ALJ or a different ALJ. But if individuals raised appointments, caused challenges before the agency, then it would be sent back to someone else. But I do want to emphasize also- First, to set it back, do we have to rule it, would our ruling have to be a constitutional ruling, or we just rule because it's of the appearance of it? Because it looks unfair. It's unfair to the system. It's unfair to the government. It's unfair to the commissioner. It's unfair to you. It's unfair to the United States Attorney, who's on here as counsel, to do it this way. It smells. I disagree with that entirely, Your Honor. I don't see any- I'm just asking if that would be an alternative method of us to send it back. Well, I think the only- You're saying it has to be a constitutional ruling. Yes, and I don't think anything in Lucia says that a decision issued by a properly appointed ALJ necessarily has to be set aside simply because the ALJ had some prior involvement. So can I go back to that example of a continued hearing? I've been trying to think of what even an analogy would be. Okay, so imagine a proceeding- I guess this is the best one I can come up with on the fly. Imagine a proceeding that's conducted by a federal magistrate judge that the Supreme Court later holds can't be conducted by a magistrate judge. But then imagine that in the course of that trial, the magistrate judge is confirmed as a district court judge. And it's like, well- And so they, in the moment, what they say they're doing is, I'm just keeping this case because I had it as a magistrate judge. It's going to be easier for me just to keep it. And then the proceeding comes to a conclusion. And then we later determined that that was not a proceeding that a magistrate judge could do at all. We'd really say that no harm, no foul. You don't have to start all over because this was a proceeding that began before someone who was not authorized. But it's all fixed because by the time the proceeding ended, the person was the kind of person who could do this. Well, the act- I think what's relevant here is, what was the act that this ALJ could not do without a proper appointment? Any of the stuff that the ALJ did during the first hearing? Well, the ALJ could- here the ALJ- but this court, of course, is not reviewing a decision from the first hearing. It's reviewing the 2019 decision, which he was properly authorized to issue. This is maybe an argument for your friend on the other side. I guess I fundamentally don't buy the idea that these are two separate proceedings. I think these are- the only way this makes sense is if these are one proceeding. OK, but if this is one proceeding, I think that underscores the fact that ruling for Mr. Chermol or Ms. Brooks here would require this court to substantially- I practiced law for a long time back in West Virginia. Most of our judges, old judges and old, experienced lawyers, referred to a court proceeding as a proceedings. Everything was a proceedings. If it lasted five minutes, it was a proceedings. Whether it was singular or whether you had 10 hearings, it was all a proceeding. It was all taken together. And they put an S on proceeding in every event. And it was kind of odd. I didn't know it until I got into the practice of law, but that's the way they did it over the years. Well, here- And here you're trying to nitpick. Well, I'm not nitpicking, Your Honor, because I think there's a really important- Well, I think you are trying to nitpick. I disagree, Your Honor. What we're trying to do is- It looks bad. It looks bad. I'd be ashamed of it. I'm sorry to hear you say that, Your Honor. Well, you shouldn't be sorry to hear me say it. And I can say it. I'm up here and I can say it right now. I've read it. I can say it. Absolutely, Your Honor. But here's what I would say in response. Lucia is an incredibly intrusive remedy. What it does, it made SEC literally redo years and years worth of adjudications. Thousands and thousands of SSA cases- In this case, all it meant is you all had to be careful what you're doing. And you ought to be that way in every case to get the system to look right and to apply it right. I agree that it- The public is entitled to have it conducted properly. In the Paralys case, the Supreme Court recognized that as it applied to SSA, you need two things. It should look fair and be fair, but it also has to work. And there are administrability concerns that get managed. Now, obviously, that has to be within- Well, that wouldn't be intrusive. It wouldn't be intrusive at all to have a new ALJ look at this lady's claim. It wouldn't be intrusive. It would work. It would work, easily work. You know that well. When agencies have to redo years' worth of adjudication, that comes at a cost to the public. I agree with that. I mean, what frustrates me about this case is there was a super easy solution. The Appeals Council should have sent it back to a different ALJ. And all of the problems that have happened in this case is because they didn't do that. At this point, that's not where we are, Your Honor. So I think the question is just, do you- But in terms of how difficult would it be with the agency to comply with Lucia, they just should have done that. I disagree that that's what compliance with Lucia means. Compliance with Lucia means that a decision issued by an improperly appointed ALJ has to be sent back to somebody else. But that's- Again, that's not this case, Your Honor. And I do want to- If I can have a moment to respond to the Corrin Probst points, just because Mr. Chermol emphasizes them so much. And I do think it's important to explain why those cases are inapplicable here. If, for example, set the Appointments Clause to the side. You had the first hearing and there was- ALJ applied the wrong legal standard and also failed to consider evidence. It went up to the Appeals Council. There was only- Are you taking Mr. Hartley's time now? I'll use a minute of his time and then, yes, I recognize what's going on here. It went back on a remand just on that one issue. The ALJ acknowledged the evidence and also applied the correct legal standard. And then it went to court. You wouldn't say that there was a forfeiture of the application of the wrong legal standard. You just say the second decision, that the decision ultimately on review did not have the defect of applying the wrong legal standard. And so, too, here. The decision was issued by a properly appointed ALJ. I do want to, unless the Court has more questions, reserve the rest of the time for Mr. Hartley. Thank you, Your Honors. Very good. Thank you very much. Appreciate it. Good to have you here. Mr. Hartley? Good morning, Your Honors. Gary Hartley with the United States Attorney's Office on behalf of the Commissioner. May it please the Court. I'm going to address the two merits issues. At the outset on both of these merits issues, I want to make clear there are no novel exceptions that SSA is promulgating in this case. Everything related to the ALJ's substantive decision is grounded in Supreme Court and Fourth Circuit precedent. With respect to the vocational expert issue, the ALJ was committed to rely on the new, more fulsome second vocational expert's testimony, especially when the prior vocational expert's testimony was the subject of remand and was challenged by plaintiff. There are no categorical rules requiring an ALJ to give any particular weight to all of the vocational experts of record or mandating that the ALJ choose one vocational expert over another, which is what plaintiff is asking in this case. So, Mr. Hartley, I agree with all of that. I think that's true. I think if this ALJ had said, I'm crediting expert two over expert one, maybe even had just said that, and certainly had said, and here is like a two-sentence explanation of why, I think this almost certainly would be upheld, putting aside the Appointments Clause issue. But we have cases that say you can't just be presented with diametrically opposed evidence and pick one and not even say that you're picking one over the other, much less fail at all to explain why you're picking one over the other. I want to respond to that in two ways. First, the law is clear that a reviewing court must read the record as a whole. That includes the hearing transcript. I agree. At the second hearing, the second vocational expert was present, plaintiff was present, plaintiff's counsel was present. There was an extended colloquy with plaintiff present. And the ALJ asked plaintiff questions about her past work in front of the vocational expert. And plaintiff responds, museum attendant is more like the people I supervised. Plaintiff volunteered concerns about the first vocational expert, distinguishing between her positions as she performed in the work of the people that she supervised. And the ALJ asked plaintiff to confirm whether that was correct, which she did. The ALJ asked, is there anything else you would like to add? This is about your inability to work. If I miss something, this is the time to give me all the information. So now we look at SSR, the Social Security rulings, and it's clear that the claimant is the primary source of information and testimony about her past relevant work. Claimant herself listened to the description of the job, took issue with the first vocational expert's characterization of it as a composite job, said, no, that's the people I supervised. And it was based on plaintiff's own clarifications after plaintiff had taken issue with the first vocational expert. That was why plaintiff sought remand. And if the ALJ had said that, I don't even know if we, I mean, again, putting bracket in the appointments clause issues, I don't know if we'd be here, but the ALJ didn't say that. Sure, but decisional perfection is not the standard. I understand. And in this case, the ALJ. So let me give you a hypo. So imagine this two hearing stuff doesn't happen. Imagine this is one hearing and both of these vocational experts testify at one here. There's a single continuous hearing. I know that's not the case, but imagine that it was. So you think that even if that had been the case, that this had been a single continuous hearing, that what the ALJ said here would be sufficient to survive review? Well, the challenge with one single hearing is then it starts to look like conflicting evidence. And yeah, it does. This is an important point because I actually don't think that you have conflicting evidence. What you have here is one vocational expert who had one set of facts with plaintiff at the first hearing. And later, you have a supplemental set of facts. Plaintiff has later clarified those facts, has provided new facts, and given those new facts to the second vocational expert. You don't have two vocational experts issuing an opinion on the same set of facts. So they don't squarely conflict. They only conflict in the opinion that they get to at the end. But because that opinion was on different facts, there's no contradiction and there was no obligation to reconcile them. The court has made clear the Eighth and Ninth Circuit have already considered this issue and specified that a court does not have to, an ALJ does not have to discuss and credit prior vocational expert testimony from a prior hearing when there's a new vocational expert. You have one decision in this case, and that is the final ALJ hearing decision. There's no question among any of the parties that the second vocational expert's testimony on more fulsome facts and data was supported by substantive evidence. I agree with you, but what I don't hear you doing is defending either the magistrate judge or the district court's conclusion that the first hearing just went poof and vanished from the record. You're not defending that today. I don't hear you defending that. The first decision was vacated. I understand the first decision was vacated, but not the record from the first. It's not like we can just pretend the first hearing didn't happen, right? That's correct. And to be clear, on appeal, this court reviews the parties' briefs de novo. So you will know in our briefs, we are not making an argument of vacating. We are not arguing that the record went poof.  That happened because, ultimately, from start to finish, you had an application, a first hearing, an initial decision, which was subsequently vacated entirely, and then you ultimately have one final decision. So you would not have us uphold the denial of benefits on the theory, which, again, at least there's language in the magistrate judge's and the district court's opinion that says you can totally disregard the first vocational expert because that is a hearing that was You can totally pretend that it doesn't exist. You are not asking us to affirm on that ground. That is correct. I'm asking you to affirm because there is substantial evidence for why the ALJ reached the conclusion that the ALJ did, which is the final decision of the commissioner here, and that is because Plain have challenged the first vocational expert. The appeals council agreed that the first vocational expert's testimony had flaws. There was new, more fulsome testimony, and a valid decision reached at the second hearing, and that decision is the one supported by substantial evidence, and that's why this court should confirm. I want to turn to the second issue on plaintiff's mild mental impairments. At the outset, it's important to state what this case is not. This is not one of a complete omission of plaintiff's mental difficulties. The question is simply asking whether the ALJ adequately discussed her mental capacity in formulating an RFC. That is a fact-dependent articulation point. There is no bright-line rule that a mild mental impairment, which is a non-severe impairment, that it necessarily must result in a functional limitation that restricts plaintiff's ability to work. This court just two years ago in Shinnebury articulated that point. So although plaintiff says that this is a purely legal issue, it is not so. Instead, it's a fact-dependent issue. Here, the record is replete with explanations that provide for meaningful judicial review and demonstrate substantial evidence. I see my time has concluded. You can finish your thought there. So the ALJ's decision discusses plaintiff's mild mental limitations and whether or not any functional limitation should result at length. The decision has to be read as a whole, as this court has repeatedly pronounced. That discussion is at steps two and three in conformance with the regulations and again in the RFC. But the decision in steps two and three went well beyond the discussion that's normally there. The ALJ discussed the impairments and then explained whether functional limitations should result. The ALJ called two state agency psychological experts, and they agreed that there were no functional limitations that should result on account of plaintiff's mild mental limitations. So based on the facts in the record here, where plaintiff's mild mental limitations were well treated by medication, plaintiff never saw a psychological expert, only saw her primary care physician. And the state agency physicians who reviewed the record found that no functional limitations were warranted. The ALJ's decision on this point is also supported by substantial evidence. Thank you. Thank you, Mr. Hartley. Yes, Mr. Caramel? Yes, Your Honor. You've saved some time. Thank you. I want to make a really important point. I'm going to get to the Lucia stuff, but I want this to be understood because we rarely, I've been on this side. I was with the SSA. I was a senior attorney there for many years. On this side, 15 years, we've appealed three cases of our own to the circuit courts. This is the third one. We won the other two in published decisions. Why did we bring this case up? Because SSA misled the district court. Look at what they wrote below. The magistrate judge and the district court judge didn't make up, oh, jeez, I guess the testimony disappeared from the record. That's what SSA had argued. They now abandoned that. They should have never argued it in the first place. Everything else they address on the substantive issues is prohibited post hoc rationalizations. A key part of Lucia I want to get into, though, is this section, the remedial section. SSA has consistently misread this. Understand, this section that gets into what Justice Breyer suggests and the footnote, this is all about the extent of the remedy, not whether a remedy will be given. In other words, what the court says is we're going to send this back and now we add one more thing. The one more thing is it's got to go to a new judge. So the issue in this part of the decision of Lucia is about whether you get a new judge or not, not whether you'd be denied a remedy altogether. The other thing that I wanted to emphasize to this court, something needs to be done. The Supreme Court issued Carr a long time ago. They issued Lucia even before that. Since Carr has come out, SSA has refused to issue any policy guidance to its adjudicators, which is why injustices like the one in this case, which was absolutely needless, and SSA shot itself in the foot. They need to be prevented because SSA needs to start abiding by Supreme Court precedent. With that, Your Honors, thank you very much for your time. I very much appreciated appearing before you. Yes, sir. Thank you very much. We appreciate your work. And hopefully next time we'll have you here personally. That being the situation, we will take the case under advisement.
judges: Robert B. King, Toby J. Heytens, Sherri A. Lydon